HOOD, Judge.
This is an expropriation proceeding instituted by the City of Alexandria against Robert M. Dinnat and Mrs. Mary L. Dinnat to obtain land owned by defendants for the construction of the Monroe Street underpass in the City of Alexandria. Prior to the filing of the suit, the city offered defendants the sum of $12,500 as compensation for the taking and damages. This offer was refused by defendants and plaintiff then instituted these proceedings. After trial of the case on its merits the trial court awarded defendants the total sum of $15,-447.60, of which amount $7,347.60 represented the value of the land taken, and $8,-100 represented amounts due as severance damages. Defendants have appealed from that judgment, contending that the award of severance damages should be increased. No answer has been filed to the appeal.
Defendants do not question plaintiff’s right to expropriate this property for use in constructing the underpass, and all parties *449 agree that the amount awarded by the trial court representing the value of the land taken, being the sum of $7,347.60, is fair and adequate. The sole issue presented here, therefore, relates to the amount awarded as severance damages. Plaintiff is satisfied with the awards made by the trial court, but defendants contend that the award for severance damages should be increased from $8,100 to $18,804.60.
The property being taken by plaintiff is an unimproved tract of land located on the northwest corner of the intersection of Monroe Street and Ninth Street in the City of Alexandria. It is a part of a larger, irregular shaped, unimproved tract owned by defendants at that intersection. The entire tract heretofore owned by defendants was bounded on the west by the right-of-way of the Texas and Pacific Railroad, on the south by Monroe Street, on the east by Ninth Street, and a portion of the irregular north line of said tract is bounded by Hamilton Street. Defendants’ property had a frontage of 244.28 feet on the railroad right-of-way, a frontage of 124.45 feet on Monroe Street, 213.33 feet on Ninth Street, and approximately 67 feet on Hamilton Street.
Plaintiff is taking the southern portion of this original tract, the property taken extending northward from Monroe Street a sufficient distance to include a frontage of 31 feet on Ninth Street and a frontage of 71 feet on the railroad right-of-way. The north line of the property being taken extends from Ninth Street to the railroad right-of-way, a distance of 120.21 feet. The property owned by defendants prior to the taking consisted of 27,017 square feet. The land sought to be expropriated comprises 6,123 square feet, leaving a remainder of 20,894 square feet owned by defendants after the taking.
Monroe Street is one of the principal arteries of traffic in the City of Alexandria, and prior to the construction of the underpass it accommodated traffic going in either direction. The property is also adjacent to the main line of the Texas and Pacific Railroad. All of the experts agree that the highest and best use of the property, insofar as determining its market value is concerned, is for warehouse, wholesale or commercial business purposes.
The plans for the construction of the underpass provide that Monroe Street wih be depressed or lowered, beginning at a point 75 or 80 feet east of Ninth Street and gradually descending in a westerly direction, along that portion of the street which borders the subject property, so that motor vehicle traffic will be able to go under the railroad. Monroe Street will be depressed about seven feet at the point where it intersects Ninth Street, and according to the plans it will be gradually lowered to a maximum of 15 feet where it goes under the railroad. A concrete retaining wall will be constructed along the deepest portion of the cut, including such a wall along the entire south boundary of defendants’ property, above which there will be a sidewalk, and above that there will be a sloping bank up to the neutral ground. The plans also require that Monroe Street at that point be changed to a one-way street for traffic moving in a westerly direction, but a “turnout” is to be provided from Monroe Street to Ninth Street in order that westbound traffic may easily turn off into Ninth Street.
Mr. George B. Hines, Jr., and Mr. Hab Monsur, both of whom are experienced and well qualified real estate experts, testified on behalf of the defendants. Both appraised the subject property on a square foot basis, and computed the value of the property taken and damages by determining the value of the entire tract prior to the taking and subtracting from that figure the value of the remainder after the taking. In determining these values they, of course, considered comparable sales of property in that area. Using that formula, Mr. Hines concluded that defendants should be awarded the total sum of $26,150 for the taking and for damages, and Mr. Monsur fixed the value and damages at $26,306.88. Both of these witnesses stated that the property re *450 maining to defendants would be greatly reduced in value by the construction of the underpass, because this remaining property would be isolated and inaccessible from Monroe Street.
The accessibility to defendants’ property will be reduced to some extent by the construction of the underpass, due to the fact that the level of Monroe Street will be lowered and that street will be changed to a one-way thoroughfare. Motor vehicles will not have access to the property directly from Monroe Street. The plans for this improvement, however, provide other means of access to the subject property which we think materially compensate for the loss of the Monroe Street frontage. Prior to the construction of the underpass vehicles have had access to defendants’ property only from Monroe and Ninth Streets. There was no access to the property from Hamilton Street on the north, because that street has never been opened for motor vehicle traffic. The plans for the construction of the underpass, however, include plans for paving Hamilton Street, so that upon completion of the project ingress to the subject property will be available from Monroe Street by means of the cut-out into Ninth Street, and both ingress and egress to and from such property will be available through Ninth and Hamilton Streets. In view of those facts we feel that the expert appraisers called by defendants were in error in assuming that the construction of the underpass would render defendants’ remaining property “very inaccessible” and “isolated.”
Mr. M. C. Gehr, a real estate expert called by plaintiff, testified that Monroe Street is a very heavily traveled thoroughfare, that traffic is always tied up at the railroad track, and that it would be difficult for trucks to enter and leave the property from Monroe Street. He testified that in his opinion, the Ninth Street frontage “would be a whole lot better from a wholesale standpoint than would your Monroe Street property.” According to his testimony, therefore, it appears that the loss of the Monroe Street frontage would not have the damaging effect on the remaining property as is contended by defendants.
The trial judge concluded that the property remaining to defendants after the taking would not be so isolated or inaccessible as to diminish its value to the extent claimed by defendants. In his excellent reasons for judgment he said:
“On the basis of these facts this court is not able to reach the conclusion that the remaining Dinnat land will be so isolated and inaccessible for its best use as warehouse or distribution center property so as to be diminished in value to the extent claimed by the defendants. Particular note is taken of the fact that the property’s best use now and later is not to be some retail purpose involving pedestrian or auto-bile traffic but it will be for the purpose of warehouses or general distribution wherein the principal traffic will be trucks. Accordingly, it cannot be stated as a fair conclusion that the ingress to and egress from the property remaining after the expropriation will be so inconvenient or difficult that its use will be thereby materially hampered.
“This court has already determined in the other cases arising out of takings for the Monroe Street underpass, namely, City of Alexandria vs. Ducote, City of Alexandria vs. Warshauer-Weil Company, Inc., and the City of Alexandria vs. R. J. Jones et als., that property in the vicinity of the Dinnat land is worth $150 per front foot. The land we are dealing with in this case is desirable property, being a large tract with long frontage on a railroad right-of-way. Additionally, it is corner property, is nearer the uptown business district and a large portion of it is covered by a concrete floor. The Jones property, which is considered to be less valuable, was given a valuation of $1.13 per square foot. Here, the leading expert appraiser presented by the defendants *451 is of the opinion that the valuation should be by the square foot method and the calculation made on the basis of $1.20 per square foot. This court is thoroughly in agreement with this approach to the problem and readily concedes that $1.20 per square foot is a reasonably true valuation. Accordingly, the award for the land actually expropriated should be fixed at $7,347.-60.
“The real problem in this case is in determining the severance damage by consideration of value of the remaining land after expropriation. According to Mr. Gehr, the solution is simply to say that the Ninth Street property is worth $80.00 per front foot before the taking and $50.00 after. Mr. Hines says that it is all worth $1.20 per square foot now but that after the taking the value will drop to $ .30jé per square foot. Mr. Monsour is of the opinion that the land has a present value of $1.15 per square foot but will be depreciated to twenty per cent of that value by the expropriation.
“As the court rationalizes the problem, we have no definite guide in fixing the after-taking value. Actually, the experts present opinions which are pure guess-work, with the defendants’ experts speculating that there will be a great diminution in value for reasons which this court can not accept.
“Admittedly, there will be severance damage if for no reason other than that the Monroe Street frontage, the part having the greater value, is to be taken. The plaintiff City has admitted in its pleadings and through its witnesses that there will result severance damage in the sum of $8100.00. Lacking any better guide, this amount should be awarded. The total compensation, then, to be paid is the total of $7347.60 and $8100.00, or the sum of $12,447.60.”
We find no manifest error in the conclusions reached by the trial judge. The evidence fails to establish that defendants have sustained severance damages in excess of those awarded by the trial court. The judgment of the district court is affirmed, therefore, and all costs of this appeal are assessed to defendants-appellants.
Affirmed.